**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pia Sievers-Greene, | No. CV-22-00742-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Audrey Davis, et al., | |
| Defendants. | |

Plaintiff Pia Sievers-Greene is the former spouse of deceased Master Sergeant Michael T. Greene ("MSgt Greene"). Plaintiff claims she is entitled to annuity payments through the military's Survivor Benefit Plan ("SBP") and now seeks review of Defendant Defense Finance and Accounting Service's ("DFAS") decision denying her request for "former spouse" beneficiary status under the SBP. Pending before the Court are cross motions for summary judgment. For the following reasons, the Court grants Defendants' motion for summary judgment, affirming DFAS' decision, and denies Plaintiff's motion for summary judgment.

**I.     BACKGROUND**

    **A. Survivor Benefit Plan**

In 1972, Congress established the SBP to provide income maintenance to the surviving dependents of deceased members of the uniformed services. Pub. L. 92-425, 86 Stat. 706. At issue in this case is the annuity payments to a former spouse. Generally,

divorce ends a spouse's coverage under the SBP. However, a former spouse may keep their SBP coverage in one of two ways: either (1) the retired service member makes a "voluntary election," notifying the Secretary of Defense in writing of the service member's decision to provide annuity to their former spouse, *see* 10 U.S.C. § 1448(b)(3)(iii), or (2) the former spouse submits a request to the Secretary for a "deemed election," *see* 10 U.S.C. § 1450(f)(3)(A). It is undisputed that MSgt Greene did not make a voluntary election prior to his death. Rather, Plaintiff contends she is entitled to annuity payments based on her request for a deemed election. (Doc. 30 at 8–9.)

A former spouse may submit a request for a "deemed election" only where the retired service member was *required* to provide annuity to a former spouse, but the service member failed or refused to make such election. 10 U.S.C. § 1450(f)(3)(A). A service member is "required to provide annuity for a former spouse" if the service member "enters, incident to a proceeding of divorce . . . , into a written agreement to make such an election and the agreement (I) has been incorporated in or ratified by a court order, or (II) has been filed with the court of appropriate jurisdiction in accordance with applicable State law." *Id.* § 1450(f)(3)(B)(i).

In such a situation—that is, where a service member was required but fails or refuses to make such an election—the former spouse must comply with the following requirements to be eligible for SBP benefits: First, the former spouse must submit to the Secretary a written request for a "deemed election." *Id.* § 1450(f)(3)(A)(i). The written request must be in such a manner as the Secretary prescribes, i.e., by completing and submitting Department of Defense Form 2656-10 ("DD 2656-10"). *Id.* Second, the Secretary must receive either (1) a copy of the court order requiring such election or incorporating, ratifying, or approving the written agreement between the service member and their former spouse, or (2) a statement from the clerk of the court that such written agreement has been filed with the court in accordance with applicable state law. *Id.* § 1450(f)(3)(A)(ii). A former spouse must submit their request for a deemed election "within one year of the date of the court order or filing involved." *Id.* § 1450(f)(3)(C).

### B. Factual Background

Plaintiff married MSgt Greene in Finland on September 17, 1994. (AR. 2.) At the time of their marriage, MSgt Greene was serving in the United States Armed Forces. (AR. 3.) On October 4, 2007, MSgt Greene voluntarily elected SBP coverage for Plaintiff and their two children. (*Id.*) MSgt Greene retired on December 1, 2007. (*Id.*)

On January 22, 2009, Plaintiff sent her attorney an SBP fact sheet and asked that he submit a request to the Defense Finance and Accounting Service ("DFAS") that Plaintiff be converted from "spouse" beneficiary to "former spouse" beneficiary under MSgt Greene's SBP. (AR. 6.) On May 20, 2009, Plaintiff and MSgt Greene divorced in the Cambridge County Court in the United Kingdom. (AR. 10.) As part of the divorce, Plaintiff and MSgt agreed to a "Consent Order," which provided that Plaintiff would be "solely entitled to the [SBP]" and that Plaintiff would "have the former spouse SBP coverage." (AR. 12.) The Consent Order bears the seal of the Cambridge County Court, but the document is neither signed by Plaintiff, MSgt Greene, nor a judge. (*Id.*)

On November 5, 2009, Plaintiff's attorney submitted to DFAS Plaintiff's Application for Former Spouse Payments from Retired Pay (DD Form 2293),[1] a copy of Plaintiff and MSgt's marriage certificate, the Consent Order, and the Cambridge County Court's Divorce Decree dated May 20, 2009. (AR. 8–13.) Plaintiff's attorney also included a brief letter to DFAS, listing the submitted documents and requesting that "in accordance with [DFAS'] rules and procedure, [DFAS] arrange to make payment directly to [Plaintiff's] bank account." (AR. 17.) Notably, Plaintiff's attorney did not submit a deemed election application (DD Form 2656-10) nor did Plaintiff's attorney request that DFAS convert Plaintiff's status from spouse to former spouse beneficiary under the SBP. (*Id.*)

On January 7, 2010, DFAS sent a letter to Plaintiff acknowledging its receipt of Plaintiff's application for payment of portion of MSgt's Greene's pay. (AR. 20.) DFAS

---

[1] DD Form 2293 states that the authority for the form comes from 10 U.S.C. § 1408 and that the principal purpose for the form is "[t]o request direct payment through a Uniformed Service designated agent of court ordered child support, alimony, or division of property to a former spouse from the retired pay of a Uniformed Service member." (AR. 8.)

- 3 -

also noted that if Plaintiff's divorce decree specifies that she is to be designated as a former spouse beneficiary for the SBP, Plaintiff "must make a 'deemed election' for SBP coverage within one year of the date of [Plaintiff's] divorce directly to the Retired Pay office." (*Id.*)

On February 4, 2010, DFAS sent a second letter to Plaintiff, stating,

> In regards to your application for payment of a portion of your former spouse retired pay under . . . 10 U.S.C. [§] 1408, we cannot honor your request and apologize for the [letter] that we sent on January 7, 2010 stating that we would honor your request and that payments would be issued the first of March 2010. We don't honor foreign court orders. Jurisdiction cannot be met. We only honor any court of competent jurisdiction of any State . . . .

(AR. 22.) Then, on February 26, 2010, a DFAS attorney sent an email to Plaintiff's attorney, stating

> [W]e can not honor the divorce decree because it does not meet the requirements of the Uniformed Services Former Spouse's Protection Act (USFSPA). The USFSPA statute found at [10 U.S.C. § 1408] sets forth the directives for payment of retired pay or retainer pay in compliance with court orders. . . . Court order means a final decree of divorce, dissolution, annulment, or legal separation issued by a court . . . . Court order also includes orders . . . that divides military retired pay. Court is more specifically defined at Section 290203 [in the Department of Defense Financial Management Regulation] as "any court of competent jurisdiction of any state (in the United States) . . . and any court of the United States, as defined at [28 U.S.C. § 451].
>
> Since the parties foreign court order does not comply with the definition of a Court, we can not currently honor the application for payment. However, you may wish to register the foreign decree of divorce . . . within a competent court of jurisdiction within the United States. Therefore, if the balance of the divorce decree meets all the remaining requirements of the USFSPA, we would be able to honor your clients request for payment.

(AR. 23.) Plaintiff's attorney sent a letter to DFAS on March 1, 2010, stating "we understand that there is an agreement in place between the United States and United Kingdom which would mean that the Court Order entered into would be upheld yourselves. . . . Given that the serviceman in this [case] acquiesced jurisdiction we trust that you will now process our application, or alternatively, confirm that jurisdiction will

- 4 -

not be recognized given all the facts in this case." (AR. 24.) After this letter, there appears to be no correspondence between Plaintiff or her attorney and DFAS until March 5, 2020, a little over ten years later. (*See* AR. 24–25.)

On March 5, 2020, Plaintiff called DFAS to inquire about the SBP. (AR. 25.) DFAS responded to Plaintiff by email that day, stating:

> Please be advised, by review of the account for SBP, you are designated as the "spouse" beneficiary for SBP annuity. If you and the member are no longer married and have since divorced, you are no longer considered the "spouse" and are no[t] entitled to SBP annuity as the "spouse" beneficiary. You will need to obtain a court order from a court in the United States awarding SBP annuity as the "former spouse" beneficiary. Garnishment Law Directorate will not accept a court order from another country.

(*Id.*) On April 1, 2020, Plaintiff's attorney filed a Notice of Filing Foreign Judgment in Maricopa County Superior Court pursuant to A.R.S. § 12-701 *et seq.* (AR. 35.) Ten days later, on April 11, 2020, MSgt Greene died. (AR. 27.)

On May 12, 2020, Plaintiff's attorney submitted to DFAS copies of Plaintiff's April 2020 Notice of Filing Foreign Judgment, Divorce Decree, and Consent Order, as well as Plaintiff's SBP Former Spouse Request for Deemed Election, DD Form 2656-10. (AR. 28–39.) On June 5, 2020, DFAS denied Plaintiff's request for deemed election, explaining that Plaintiff must provide a copy of the U.S. court order signed by a judge that approves/ adopts the registration of the foreign order and that the Notice of Filing of Foreign Judgment was insufficient. (AR. 41.) DFAS also noted that the Consent Order between Plaintiff and MSgt Greene lacked any signatures of the parties or the judge. (*Id.*) DFAS directed Plaintiff to 10 U.S.C. §§ 1447 and 1450 for a detailed explanation on the SBP and then explained that Plaintiff would need to submit a DD 2656-10 form "within 1 year of the date the court entered the order requiring election of former spouse SBP coverage." (*Id.*)

Plaintiff requested DFAS reconsider its decision. On February 11, 2021, DFAS affirmed its denial of Plaintiff's deemed election request. (AR. 49.) On March 5, 2021, Plaintiff appealed DFAS' final decision to the Defense Office of Hearings and Appeals (DOHA). (AR. 52–59.) On November 26, 2021, DOHA affirmed DFAS' decision. (AR.

- 5 -

82–83.) DOHA first noted that Plaintiff's Notice of Filing of Foreign Judgment pursuant to A.R.S. § 12-1702 was not sufficient for the Divorce Decree and Consent Order to qualify as "court orders" under 10 U.S.C. § 1408(a). (*Id.*) DOHA explained that, based on Arizona case law, A.R.S. § 12-1702 provides for the enforcement of judgments from sister states, not from foreign countries, and so registering Plaintiff's Divorce Decree and Consent Order under § 12-1702 was not proper. (*Id.*) Rather, Plaintiff should have registered her orders under A.R.S. § 25-1301, which provides that a foreign support order may be registered in Arizona for enforcement. (*Id.*) DOHA then explained that even if Plaintiff had properly registered her foreign orders under A.R.S. § 25-1301, her deemed election for former spouse SPB coverage was required to be received by the Secretary within one year of Plaintiff's May 20, 2009 divorce. Plaintiff's request for a deemed election for former spouse SBP coverage was untimely because it was not submitted until April 15, 2020. (*Id.*)

Subsequently, Plaintiff filed suit in this Court seeking review of DFAS' decision under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq*. Pending now are the parties' cross motions for summary judgment.

**II.    LEGAL STANDARD**

Generally, a court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, when a court is asked to review an administrative agency's action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985). In such cases, the agency, not the Court, is the fact finder. The Court's role is merely to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* Thus "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.*

Under the APA, a reviewing court must uphold agency action unless it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence.

5 U.S.C. § 706(2)(A), (E). The party challenging an agency's decision bears the burden of demonstrating that the agency acted in violation of the APA. *Forest Guardians v. U.S. Forest Serv.*, 370 F. Supp. 2d 978, 984 (D. Ariz. 2004).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Under this standard, "a reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute." *Id.* at 42. Although the Court's review is highly deferential, an agency must articulate a satisfactory explanation for its actions and provide a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). Generally, a court will find an agency decision to be arbitrary and capricious if "the agency has . . . offered an explanation for its decision that runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." *State Farm*, 463 U.S. at 43.

An agency decision satisfies the "substantial evidence" standard if it is supported by "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The standard requires "more than a mere scintilla but less than a preponderance" of evidence. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). Again, the Court's review is highly deferential. *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010). "Where the agency has relied on 'relevant evidence [such that] a reasonable mind might accept as adequate to support a conclusion,' its decision is supported by substantial evidence." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014). And "[if] the evidence is susceptible of more than one rational interpretation, [the Court] must uphold [the agency's] findings." *Bear Lake Watch, Inc.* v. *F.E.R.C.*, 324 F.3d 1071, 1076 (9th Cir. 2003).

### III. ANALYSIS

There are two issues for the Court's consideration: (1) whether Plaintiff's Notice of

Filing of Foreign Judgment is "a court order, regular on its face, which . . . incorporates, ratifies, or approves the written agreement" between Plaintiff and MSgt Greene, and (2) whether Plaintiff timely submitted her request for a deemed election.

### A. Court Order

As mentioned, for a former spouse to make a request for a deemed election under § 1450, the former spouse must submit to the Secretary either "a copy of the court order, regular on its face, which requires such election or incorporates, ratifies, or approves the written agreement [between the service member and their former spouse]" or "a statement of the clerk of the court (or other appropriate official) that such agreement has been filed with the court in accordance with applicable State law." 10 U.S.C. § 1450(f)(3)(A)(ii).

The USFSPA defines "court order" as "a court's final decree of divorce . . . or a court ordered, ratified, or approved property settlement incident to such a decree." 10 U.S.C. § 1447(13). A "final decree" is defined as "a decree from which no appeal may be taken or from which no appeal has been taken within the time allowed for the taking of such appeals under the laws application to such appeals." (*Id.*) "Court" is defined as "any court of competent jurisdiction of any State . . . , [and] any court of competent jurisdiction of a foreign country with which the United States has an agreement requiring the United States to honor any court order of such country." *See* §§ 1447(12); 1408(a)(1).

There is no dispute that Plaintiff's Divorce Decree and Consent Order on their own do not qualify as a "copy of a court order" under § 1450 since the Cambridge County Court fails to meet the definition of a "court" under the USFSPA. The issue then is whether the filing of these foreign orders in Maricopa County Superior Court pursuant to A.R.S. § 12-1202 qualifies as a "court order . . . which ratifies, incorporates, or approves the written agreement" between Plaintiff and MSgt Greene. DFAS concluded it did not because Plaintiff filed the foreign judgment in Maricopa County under the wrong statute, in addition to the fact that Plaintiff's filing failed to demonstrate that a court "approved, ratified, or incorporated" the Consent Order between Plaintiff and MSgt Greene. The Court finds that DFAS' conclusion is not arbitrary or capricious and is supported by substantial evidence.

A.R.S. § 12-1702 provides,

> A copy of any foreign judgment . . . may be filed in the office of the of the clerk of any superior court of [Arizona]. The clerk shall treat the foreign judgment in the same manner as a judgment of the superior court of this state. A judgment so filed as the same effect and is subject to the same procedures, defenses, and proceedings . . . and may be enforced or satisfied in like manner.

Arizona courts, however, have clarified that a "foreign judgment" under § 12-1702 refers to judgments of "a sister state but not [] judgments from foreign countries." *Multibanco Comermex, S.A. v. Gonzalez H.*, 630 P.2d 1053, 1053 (Ariz. Ct. App. 1981); *see also Rotary Club of Tucson v. Chaprales Ramos de Pena*, 773 P.2d 467, 469 (Ariz. Ct. App. 1989). It was reasonable for DFAS to conclude that Plaintiff's filing of her foreign orders in Arizona pursuant to A.R.S. § 12-1702 failed to properly domesticate those orders and thus Plaintiff did not provide DFAS with a copy of a court order that either ratified, approved, or incorporated her written agreement with MSgt Greene, as required by 10 U.S.C. § 1450.

DFAS goes on to argue that the applicable Arizona statutes Plaintiff should have used were A.R.S. §§ 25-1205 and 25-1301, which provide that a "support order or an income withholding order issued in another state or a foreign support order may be registered in this state for enforcement." (*See* Doc. 31 at 10.) Plaintiff responds that DFAS is incorrect because § 25-1301 is part of Arizona's Uniform Interstate Family Support Act, and this act only applies to the registration and enforcement of child support and family maintenance. (*See* Doc. 32 at 4.) The Court need not reach this argument given DFAS' reasonable conclusion regarding the deficiency of Plaintiff's Notice of Filing of Foreign Judgment pursuant to A.R.S. § 12-1702.[2]

Plaintiff also argues that although an agency is generally entitled to deference when

---

[2] The Court will note, however, that under Arizona's Uniform Interstate Family Support Act, a "support order" is defined as a "judgment, decree, order . . . issued in a state or foreign country for the benefit of a child, a spouse or former spouse, that provides for monetary support . . . . Support order may include related costs and fees, interest, income withholding . . . and other relief." A.R.S. § 25-1202(29). Given this definition and that § 25-1301 specifically provides for the registration and enforcement of a support order from another country, there exists a non-frivolous argument that Plaintiff could properly domesticate her Divorce Decree and Consent Order under A.R.S. §§ 25-1205 and 25-1301.

it reasonably interprets statutes and regulations the agency is responsible for administering, DFAS is not entitled to deference here in its interpretation of the Arizona Revised Statutes because state law falls outside the scope of DFAS' administrative authority. The Court is not persuaded that DFAS engaged in any interpretation of Arizona law; rather, DFAS deferred to Arizona courts' interpretation of A.R.S. § 12-1702, and that case law makes clear that § 12-1702 does not apply to judgments from foreign countries. In sum, it was not arbitrary or capricious for DFAS to conclude that Plaintiff failed to comply with the court order requirement under 10 U.S.C. § 1450(f)(3)(A)(ii), and that decision is supported by substantial evidence.

### B. Timeliness of Plaintiff's Request

To make a timely request for a deemed election, "the Secretary concerned [must] receive a request from the former spouse . . . within one year of the date of the court order or filing involved." 10 U.S.C. § 1450(f)(3)(C). Plaintiff and Defendants dispute the expiration of the one-year time limit on Plaintiff's request. Plaintiff argues that the one-year limit starts running from the date of the "court order" granting the former spouse SBP coverage—i.e., an order from a qualifying court, such as Maricopa County Superior Court, not Plaintiff's Divorce Decree and Consent Order from the United Kingdom. (Doc. 30 at 8–9.) Defendants, however, argue that the one-year limit starts running from the date of divorce. (Doc. 31 at 10.)

Defendants contend that DFAS' interpretation of § 1450(f)(3)(C) as requiring a deemed request within one year of divorce is reasonable given that a voluntary election by a service member for former spouse coverage—as opposed to the deemed election procedure—must be received by the Secretary "within one year after the date of the decree of divorce, dissolution, or annulment." 10 U.S.C. § 1448(b)(3)(iii). Defendants reason that "the voluntary election procedure clearly indicates that the limitations period runs from the date of the divorce, and while the [deemed election] limitations provision is less explicit, it is logical for DFAS to interpret these provisions consistently, i.e., both procedures for obtaining former spouse coverage are limited to one year from the date of the divorce."

(Doc. 31 at 10.) Defendants' argument presumes that *Chevron* deference is appropriate here—that 10 U.S.C. § 1450(f)(3)(C) is ambiguous and so DFAS' reasonable interpretation of statute must be given controlling effect. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1994); *see also Nw Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1141 (9th Cir. 2007) (noting that if a statute is ambiguous and Congress has delegated interpretative authority to the agency, then *Chevron* deference applies and the agency's "legislative regulations are given controlling weight"). However, neither Plaintiff nor Defendants explicitly argue whether the statute is indeed ambiguous or whether *Chevron* applies.

That said, the Court need not reach this issue at this time given that DFAS' decision must be affirmed on the finding that Plaintiff failed to provide a sufficient court order as required by 10 U.S.C. § 1450(f)(3)(A)(ii). Put differently, even assuming that Plaintiff's request for a deemed election was timely, DFAS reasonably denied the request based on Plaintiff's failure to comply with the court order requirement.

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 30) is **DENIED** and Defendants' cross motion for summary judgment (Doc. 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 19th day of December, 2023.

Douglas L. Rayes
United States District Judge